# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

DAWN NOWLIN, et.al.                          )
                                             )
Plaintiffs,                                  )
                                             )
                                             )
v.                                           )  **No: 20 CV 01229**
                                             )
                                             )  **Judge James F. Shadid**
JAY ROBERT PRITZKER,                         )
Governor of Illinois, In his Official        )  **Magistrate Judge Jonathan E. Hawley**
Capacity,                                    )
                                             )
Defendant.                                   )

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS AND MEMORANDUM IN SUPPORT OF THE SAME

PLAINTIFFS, DAWN NOWLIN, et. al.,  (hereinafter "Plaintiffs") by and through their counsel, John C. Kreamer and Joseph E. Urani of The Kreamer Law Group, L.L.C., hereby submit their Response in Opposition to Defendant's Motion and Memorandum to Dismiss Plaintiffs' Complaint at Law, and in support of the same, state as follows:

Dated:  September 18, 2020                    John C. Kreamer
                                             Joseph E. Urani

                                             Kreamer Law Group, LLC
                                             1100 E. Warrenville Rd.  Suite 135
                                             Naperville, IL  60563

# TABLE OF CONTENTS

INTRODUCTION...................................................................................... 1

STANDARD OF REVIEW..................................................................... 4

LAW AND ARGUMENT........................................................................ 5

    I.      Plaintiffs' Claims are Not Barred by the Eleventh Amendment or
           Sovereign Immunity. ................................................................... 5

    II.    The Governor's Orders are Not Valid Even by the Jacobson
           Standards. ................................................................................. 10

    III.   Plaintiffs' do Not Lack Standing. ................................................ 12

    IV.   Plaintiffs' Claims do State Valid Causes of Action. .......................... 12

          A.  Plaintiffs Successfully State Claims in Counts I, II and IX ......... 13

          B.  Plaintiffs Successfully State Claims in Counts III, IV, V
              and VI ................................................................... 15

          C.  Plaintiffs Successfully State a Claim in Count VII ................... 16

          D.  Plaintiffs Successfully State a Claim in Count VIII ................. 18

          E.  Plaintiffs Successfully State a Claim in Count X ..................... 20

          F.  Plaintiffs Successfully State Claims in Counts XI and XII
              and are entitled to injunctive and Declaratory Relief ............... 22

CONCLUSION ................................................................... 23

**Introduction**

At the onset, it is baffling that there is such an aggressive stance taken by Defendant to exert his extraordinary emergency powers in greatly restricting the fundamental rights of Plaintiffs and all citizens of Illinois in an admittedly indefinite manner with no end in sight. Plaintiffs' Complaint centers on the basic fundamental rights that make the United States unique from any country or civilization in all of known history. In addition to that, crucial to all Americans is the fundamental belief that the Chief Executive's power is not unlimited even in the face of a pandemic. That power must always be kept in check; we are not a nation of kings. Yet, the Plaintiffs face such resistance to these issues from the Defendant's motion, which argues the Plaintiffs aren't even allowed to utilize the courts to protect their fundamental rights. Plaintiffs have no other choice but to defend their rights through the courts. The glaring issue is whether or not common sense will prevail in the end, and it will be acknowledged that these fundamental rights must be protected and should be precious to all of us, regardless of political leanings. Politics will continue to change over time, our fundamental rights as Americans should not.

The primary basis of Defendant's motion to dismiss and memorandum in support of the same is based on the contention that Plaintiffs are living in an "alternative reality" and have a "willful blindness" concerning the current state of affairs in Illinois for the Covid-19 response. The mind-boggling truth of Governor Pritzker's misinformed beliefs is the only willful blindness, and alternative reality present here. It shocks the conscience that his callous willingness to destroy the livelihood of his own state and its citizens, including Plaintiffs, in a desperate attempt to gain political ammunition for his party could go to such extreme lengths.

Defendant contends in his introduction that it is the Plaintiffs who fail to support their contentions that the Covid-19 responses have no real basis in actual science or data. For months,

1

and even until this day, Illinois has been inundated with numbers of how many new infections are found every day in Illinois and how many people have died.  Those multi-daily reports rarely break down the demographics of who the unfortunate victims are, how many victims also suffered from severe comorbidities and advanced age, of what part of the state they reside.  After Defendant's current motion was filed, the Illinois Department of Public Health released its finding that Covid-19 was the sole contributing cause for **fewer than 400 deaths in Illinois** since the onset of the pandemic.  Yet, it is continually reported that over 8,500 people have died in Illinois to date due to the virus.  This is grossly misleading and attempts to paint a much scarier scenario than actually exists.  The average in Illinois matches the national average in this regard as well, when at the same time, the **C.D.C. announced that 94% of the deaths attributed to Covid-19 involved individuals who had more than one comorbidity and the vast majority of all Covid deaths were of individuals over 65.**  On its face, the Defendant could have narrowly tailored his restrictions to the people of Illinois most affected and in danger of succumbing to this virus.  Instead, he refuses to do so, all the while begging the question of which party to this suit is failing to live in reality or giving in to willful blindness?  No one wants to see the tragic loss of any life.  In spite of that fact that we can all agree on, the loss of life due to this pandemic cannot be an excuse or license to destroy our fundamental freedoms indefinitely.  If a Covid-19 world is the new normal, we will have to come to terms with how to live in that new world, without destroying the rights that so many have given their lives protecting in the past.

In another overall theme of the motion to dismiss, the Governor argues and cites recent cases that have addressed his restrictions on social gatherings.  In particular, one such case stated that limiting social interactions is necessary because "if 100 people gather and ten get infected, those ten may go home and infect a local shopkeeper, a local grocery store worker, their postal

carrier, or their grandmother- someone who had no interest in the earlier gathering." *Ill. Republican Party v Pritzker*, No. 20-2175 (7th Cir. July 3, 2020).  Defendant fails, however, to address how this finding addresses the fact that Defendant's acts of ***selective extra-Constitutional decrees*** and ***view-point Constitutional discrimination*** give him the unprecedented power to pick Constitutional winners and losers concerning the selective application and enforcement of his social interaction orders.  By his actions and decrees, and in his motion to dismiss, Defendant Pritzker would have this Honorable Court believe that the risk of gatherings of over "100 people" could spread the virus to many other people who the "100 people" came into contact with only apply to certain gatherings. Governor Pritzker remains steadfast in his basis for continuing these drastic measures and limits on freedom, all in the name of "science" and "saving lives." ***Still, it was the Governor who remained silent concerning all the protests and marches that occurred in Illinois and that he participated in.***  At no time did he ever present any "science," which explained how the protests and demonstrations (most of which consisted of well over 100 people) somehow were immune and not culpable for the deadly spread of the virus.  How many people, by his logic in Illinois, became infected and died due to his unwillingness to prevent or stop the protests and riots?  How many people did the Governor place at risk for his photo-op protest march with Antifa protestors. At no time did he ever speak out against, or use any authority to enforce his limitation orders on the protesters or marchers, they were granted a complete pass.  In fact, the Governor marched right next to protestors only inches apart and many without masks.

Defendant Pritzker's acts of selective extra-Constitutional decrees and view-point Constitutional discrimination cannot be allowed to stand where he picks Constitutional winners like marijuana dispensaries and Antifa protestors while he restricts honest and hardworking people from gathering at restaurants, bars, small businesses, sporting events, schools, beaches, parks, and

churches – the Governor's Constitutional losers. Defendant's motion strategically makes no mention of this glaring issue. For the reasons discussed herein, the Defendant's motion must be denied in its entirety, and the Plaintiffs' Complaint must be allowed to move forward.

Defendant Pritzker's actions and orders cannot be allowed to stand because there is no situation which warrants indefinite restriction on fundamental Constitutional rights by the fiat of the executive without any input whatsoever by the legislature. Yet, this is what the Defendant is precisely proposing by his actions and orders. There is no proposed end date of Defendant's restrictions until a vaccine is obtained, and there is no guarantee that a vaccine will ever be obtained. To this date, no vaccine has ever been discovered for the common cold or the AIDS virus. Defendant cites no precedent to establish this type of extraordinary power. For this reason and those discussed at length below, Defendant's motion must be denied in its entirety.

"Even in an emergency, the authority of government is not unfettered. The liberties protected by the Constitution are not fair-weather freedoms – in place when times are good, but able to be cast aside in times of trouble… The Constitution cannot accept the concept of a "new normal" where the basic liberties of the people can be subordinated to open-ended emergency mitigation measures. Instead, the Constitution sets certain lines that may not be crossed, even in an emergency." *Cty of Butler v Wolf*, 2020 U.S. Dist. LEXIS 167544, (September 14, 2020).

### Standard of Review

Federal Rule of Civil Procedure 12(b)(6) requires an inquiry into whether Plaintiff's claim was in sufficient detail to give Defendant fair notice of the claim and contain sufficient factual matter, accepted as true to stat a claim that is plausible on its face. *Bell Atl. Corp. v Twombly*, 550 US 544 (2007). A rule 12(b)(6) motion has nothing to do with the merits of the case; the motion tests the "sufficiency of the complaint itself." *Bell v. City of Country Club Hills*, 841

4

F.3d 713, 716 (7th Cir. 2016). In determining a complaint's sufficiency, the Court typically confines itself to the complaint, *Yassan v. J.P. Morgan Chase & Co.* 708 F.3d 963, 975 (7th Cir. 2013); *General Elec. Capital Corp. v. Lease Resolution Corp., 128* F.3d 1074, 1080 (7th Cir. 1997) (stating that "a court simply examines the allegations in the complaint to determine whether they pass muster"), and the complaint's allegations are accepted as true, *Trujillo v Rockledge Furniture L.L.C.*, 926 F.3d 395. (7th Cir. 2019). Extrinsic material is not consulted. *Duda v. Board of Educ.*, 133 F.3d 1054, 1055 (7th Cir. 1998).

In other words, the motion cannot be used to resolve factual issues or the merits of the case. *Republican Party v. Martin*, 980 F.2d 943, 952. The issue is not whether the Plaintiff will ultimately prevail, but whether the Plaintiff will be able to offer evidence to support its claims. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173. The Court must indulge all inferences in favor of the Plaintiff. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498; *Jones v. General Electric Co.* 87 F.3d 209, 211. If the factual allegations are plausible, the Court cannot decide disputed fact issues, and the Court must assume that all plausible facts contained in the complaint are true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).* Finally, in light of the presumption in favor of giving plaintiffs at least one opportunity to amend, denying a plaintiff that opportunity carries a high risk of being deemed an abuse of discretion. *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.,* 786 F.3d 510.

## **Law And Argument**

### I.  **Plaintiffs' Claims Are Not Barred by the Eleventh Amendment or Sovereign Immunity.**

The parties can agree that the rights set forth in the First Amendment to the Constitution, which is mirrored by their Illinois Constitution counterparts, are the most sacred rights of all citizens. Often, the court system is the only method available to citizens to fight against the

unlawful infringement on those rights by the government.  The first section of the Defendant's motion would have this Court believe that no such cause of action against Defendant is feasible, rendering him infallible and untouchable and that all of the Plaintiffs' claims are barred by the Eleventh Amendment and sovereign immunity.  Defendant argues in the first section of his argument that 1) counts I through VI, and X of Plaintiffs' Complaint are barred because they seek only monetary damages; 2) Counts I, III, V, VII, and VIII are barred because they rely on 42 U.S.C. §§ 1983 and 1988 which are improper for claims of monetary relief against the Defendant acting within his official capacity; 3) Counts II, IV, VI and IX and the "state-law" portions of counts XI and XII are barred because they seek relief solely under Illinois law against Defendant in federal Court.  Each of Defendant's arguments in section one of his motion is inapplicable, unsupported by authority, and must be disregarded by this Court as all of the Plaintiffs' claims are plausible as pled.

Concerning the first argument of section one: Defendant has set forth no binding authority which holds or prohibits a plaintiff from seeking claims asserting violations of the fundamental rights of the First Amendment and it's Illinois counterparts in federal Court or seeking monetary damages from a state in that regard.  A clear review of Counts I through VI and X proves that Plaintiffs are not merely seeking monetary damages, but instead attorney fees, as these are the counts seeking redress for the violation of their fundamental constitutional rights.  It is well established that plaintiff's seeking redress for constitutional violations are entitled to seek attorney fees. The Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988, authorizes the Court to allow a "reasonable attorney's fee" to prevailing civil rights plaintiffs.  *Norton v. City of Springfield*, 281 F. Supp. 3d 743, 744. (Cent. Dist. IL, 2017).  This is precisely the "monetary"

6

damages that Plaintiffs seek here and there is no precedent to show they are barred from doing the same.

In support of this contention, Defendant relies on two cases which are readily distinguishable from the claims alleged and facts at bar. For instance, *Coll. Sav. Bank v Fla. Prepaid Postsecondary*, 527 US 666, the Supreme Court addressed solely a case involving a claim brought by Plaintiff under the Lanham Act against a state agency. Similarly, in *Edelman v Jordan*, 415 US 651, the Supreme Court addressed a class action suit wherein plaintiffs brought suit under the federal-state program of Aid to the Aged, Blind, and Disabled (AABD), and held that the relief could not include a retroactive award from state treasury funds. Despite this, Defendant wants this Court to find that all of the Plaintiffs' First Amendment claims, both federal and state, as well as their claim regarding violation of the 5th Amendment in Count X are barred by these two obscure cases which don't address fundamental Constitutional rights at all or claims brought addressing violations of the same. These cases do not address why Plaintiffs here should be barred from seeking attorney fees pursuant to §1988. This argument fails to establish any just reason for this Court to dismiss Counts I through VI of Plaintiffs' Complaint, and the same must be disregarded and denied.

For the second argument of section 1: Defendant's contention that Counts I, III, V, VII, and VIII are barred because they rely on 42 U.S.C. §§ 1983 and 1988 against him in his official capacity is false. Again, Defendants fail to assert any proper authority to support this argument. Instead, Defendant merely refers the Court to see *Nat' l Private Truck Council, Inc. v. Okla. Tax Comm'n*, 515 US 582. A clear review of that case reveals that it states nothing supporting Defendant's contention that the above-referenced counts are barred because the Plaintiffs are not allowed to file claims or seek fees against the Defendant in his official capacity under §§ 1983 and

1988. Instead, the Supreme Court in *Nat'l Private* stands for the narrow and limited view that "in the case at hand, the state courts could not award either declaratory or injunctive relief under 1983 against the state taxes at issue, where, among other factors, the challengers did not dispute that the state had offered an adequate remedy in the form of refunds, and ...as in the case at hand, no relief could be awarded under §1983, no attorneys' fees could be awarded under §1988." *Id*. There is no basis for Defendant to contend that Plaintiffs are barred from seeking attorney fees for claims of violations of their basic civil rights against a state or its agencies or officials. *Norton at* 744. Numerous federal cases have upheld the award of attorney fees in actions against states or its officials. *See King v. IL State Bd. of Elections*, 410 F.3d 404 (7th Cir. 2005); *Munson v. Milwaukee Bd. of School Directors*, 969 F.2d 266 (7th Cir. 1992). There is no just reason for this Court to dismiss Counts I, III, V, VII, and VIII of Plaintiffs' Complaint based on this argument, and the same must be disregarded and denied.

Concerning the third argument of section 1: Defendant's contention that Counts II, IV, VI, and IX and portions of Counts XI and XII are barred because they violate the Eleventh Amendment is untrue. In support of this, Defendant relies on *Pennhurst State Sch. & Hosp. v. Halderman*, 465 US 89 (1984). The holding in *Pennhurst*, however, was not as all-encompassing as the Defendant wishes this Court to believe, and the facts presented to the *Pennhurst* court are opposite of the facts at bar. *Pennhurst* held that federal courts lacked jurisdiction, under the Eleventh Amendment, to order petitioners on an issue to conform their conduct to state law on patient care. Since the respondents' claims were against the state, the federal judiciary had no jurisdiction. *Id*. This certainly does not address this Court's jurisdiction of the First Amendment equivalents in the Illinois Constitution, where Plaintiffs here are alleging violations of their basic rights. Additionally, at no point does *Pennhurst* hold that the Eleventh Amendment destroys or vitiates

8

all subject matter jurisdiction over state law claims. *See Rygor v. University of Minn.*, 604 N.W.2d 128, 2000. Defendant thus cites no authority, which states that the Plaintiffs' Federal and State Constitutional claims fail to derive from the same nucleus of operative fact and that there is any reason why they should not be tried in one judicial proceeding. Defendant cites no authority to mandate dismissal of Counts II, IV, VI, and IX and portions of Counts XI and XII on this basis.

The entirety of Defendant's argument in section I of its motion is premised on the false assertion that Counts I through X of the Plaintiff's Complaint are seeking monetary compensation. A straightforward reading of the Complaint and these Counts shows that to be absurd. The Plaintiffs' claims are based on the unjust violation of their inalienable rights being infringed upon by Defendant. This is the basis of the relief sought by the Plaintiffs in this matter. The fact that they are claiming attorney fees under §1988 cannot be characterized as compensation or money damages. It is well-settled law that in an action for attorney fees brought under section 1988 of chapter 42 of the United States Code, the "prevailing party" is entitled to collect attorney fees from the other party. *See White v. New Hampshire Department of Employment Security,* 455 U.S. 445 (1982); *Coldwell Banker Havens v. Renfro*, 288 Ill. App. 3d 442. (Ill. Dist. 5, 1997). The Supreme Court also expressed in *White* that attorney's fees cannot fairly be characterized as an element of 'relief' indistinguishable from other elements. Unlike other judicial relief, the attorney's fees allowed under §1988 are not compensation for the injury giving rise to an action. Their award is uniquely separate from the cause of action to be proved at trial. *White* at 447.

The Supreme Court's analysis in White speaks directly to the misapplication of Defendant's caselaw and arguments in section one of his motion. The Plaintiffs did not file this suit to recover attorney fees as compensation. The Plaintiffs were forced to incur attorney fees due to the Constitutional violations imposed upon their rights by the Governor. Defendant's motion sets forth

9

no legitimate basis to dismiss Counts I through X of the Plaintiff's Complaint because there is no legitimate basis to assert that the Eleventh Amendment and sovereign immunity bar the same. As such, Defendant's motion must be denied in this regard in its entirety. If this honorable Court disagrees and finds that Counts I through X are deficient in any way, Plaintiffs respectfully ask for leave to file an amended complaint accordingly.

## II.     The Governor's Orders are Not Valid Even by the Jacobson Standards.

Defendant next asserts that Plaintiff's Complaint must be dismissed because it fails to address the differential standard in *Jacobson v. Massachusetts*, 197 US 11 (1905), which addresses Constitutional claims in a pandemic. In support of this, the Defendant cites many recent cases across the country that have been brought against states and governors concerning Constitutional violations in light of the Covid-19 response. These recent cases rely on the recent Supreme Court decision written by Chief Justice Roberts in *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020).

The short decision by Justice Roberts in *S. Bay*, and the list of cases across the country that have cited to it, do not address the same factual pattern as addressed by Plaintiffs in the case at bar. Chief Justice Roberts was not deciding the *S. Bay* case on the merits, and he did not address the question presented in this Complaint at bar as to ***Defendant's acts of selective extra-Constitutional decrees and view-point Constitutional discrimination giving him the unprecedented power to pick Constitutional winners and losers concerning the selective application and enforcement of his social interaction orders***. When stating that "when officials undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad," he certainly was not condoning the actions of Defendant wherein he can be allowed to choose certain groups that must abide by the lockdown rules, and in contrast, others are

given a pass and face no repercussions. Restaurants, hair salons, bars, and small businesses are severely limited in the number of patrons they can allow in their establishments at a given time. Still, protesters are allowed to gather in unlimited numbers.

*Jacobson* does not give state officials and this Defendant free reign to impose any restrictions with such blatant inequity because of medical or scientific uncertainty as to the spread of this virus. If Governor Pritzker is privy to science that shows the virus or its spread is somehow non-existent for the protesters that he is politically aligned to and has joined in the very same gatherings, he should divulge and release that information to the public. If such information exists, the people of Illinois and across the country have a right to know and see it.

Additionally, *Jacobson* does not give Defendant the power to assert these restrictions on the Plaintiffs' fundamental Constitutional rights indefinitely. At the same time, we wait for a vaccine or for Covid-19 to be eradicated (with the stark knowledge that neither event may ever occur). Contrary to Defendant's contention, the fact that government officials are faced with emergency circumstances as outlined in *Jacobson* does not change the analysis. The Supreme Court acknowledges in Jacobson that a government "enactment or regulation, even if based on the acknowledged police powers of a state, must always yield in case of conflict…with any right which the Constitution gives or secures." *Jacobson* at 25. Courts have long recognized in analyzing *Jacobson*, that a government official's exercise of emergency powers "is not conclusive or free from judicial review," and normal methods of constitutional analysis must still be applied. Even under *Jacobson*, constitutional rights still exist. *See United States v Chalk*, 441 F.2d 1277, 1281 (4th Cir. 1971); *On Fire Christian Center v Fischer*, 2020 WL 1820249 (W.D. Ky. 2020).

In all, *Jacobson* and *S. Bay* do not grant the Defendant any basis for dismissing this suit. With each passing day, the sweeping and drastic measures taken by the Defendant persist

indefinitely under his emergency powers, even though the pandemic is clearly under better control since March 9, 2020. Waiting for a cure may be like waiting for magic panacea that will never come. At some point, we may be forced to live with the reality that there will never be a cure. If that is the case, life must go on without any of these restrictions. As such, Defendant's motion must be denied in its entirety on this basis.

### III.    Plaintiffs' Do Not Lack Standing.

Defendant next contends that the Plaintiffs lack standing because the Complaint fails to allege any particularized injury. A clear review of the Complaint proves this assertion to be false. It is well-established law that the "loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury." *See Elrod v Burns*, 427 US 347 (1976); *New York Times Co. v. the United States*, 403 U.S. 713 (1971); *Cooper v. Rockford Newspapers, Inc.*, 50 Ill. App. 3d 250 (Ill 2d Dist. 1977). The Plaintiffs' Complaint resounds in loss of their fundamental Constitutional rights under the First Amendment and the equivalent sections of the Illinois Constitution. See ECF 2 para 74, 76, 83, 85, 89 a-f, 91, 97 a-f, 99, 103 a-g, 105, 111 a-g, 113.

There is no basis for dismissing the Plaintiffs' complaint based on lack of standing for failure to claim an injury, and Defendant's motion must be denied in this regard. If this Honorable Court disagrees with the Plaintiffs in this regard, they respectfully ask for leave to file an amended complaint.

### IV.    Plaintiffs' Claims do State Valid Causes of Action.

A clear review of Plaintiffs' 47-page Complaint shows that they have pled numerous facts with clear and precise allegations for each Count. Section IV of Defendant's motion consists mostly of a rant and not a legal basis as to why Plaintiffs' failed to state a claim under any of the

Counts. This bluster is an improper argument for a 12(b)(6) motion. Concerning the factual allegations, the Court must conduct an inquiry into whether Plaintiff's claim was in sufficient detail to give Defendant fair notice of the claim and contain sufficient factual matter, accepted as true to state a claim that is plausible on its face. *See Bell Atl. Corp. v Twombly*, 550 US 544 (2007). In the myriad of arguments put forth by Defendant, it is clear that he has no firm basis to sustain a legitimate Rule 12(b)(6) motion as Plaintiff has pled sufficient facts to make each claim plausible on its face. Section IV of the Defendant's motion does nothing more other than presents Defendant's arguments against the merits of the allegations, which is improper. *See Bell v. City of Country Club Hills,* at 716. As such, Defendant's motion to dismiss must fail.

### A. Plaintiffs Successfully State Claims in Counts I, II, and IX

Defendant's assertion that Plaintiffs' claims of violation of the free exercise of religion and violations of the Illinois Religious Freedom Restoration Act fail to state a cause of action is false. The sole basis of Defendant's argument in this regard is that the Plaintiffs' fail to mention that the Governor's orders have specifically exempted the free exercise of religion since May 29, 2020, indicating that "all arrangements for worship are permitted," thus rendering Plaintiffs' religious claims moot. Defendant states that religious exercise has been exempt from his orders, and there have been no limits to religious activities since May 29, 2020. Even if it is determined that Defendant's May 29, 2020 exemption was really an exemption at all, which is denied, Defendant still completely ignores the fact, as alleged in Plaintiffs' Complaint, that he violated the free exercise of religion prior to May 29, 2020 from the onset of his orders. This in actuality applies to all of Defendant's violations here, in spite of the differences between the phases and periods of lockdown, Plaintiffs' rights were being violated from the beginning of the Governor's orders in March, April, and May.

Plaintiffs acknowledge the Defendant's "exemption" as outlined in paragraphs 48 and 74 of their Complaint. E.C.F 2. Within those paragraphs, the Plaintiffs allege that despite the Defendant's exemption order, he uses his power as Governor to "strongly recommend and suggest limits to freedom to worship by 1)avoiding in-person activity, 2) continuing remote services, 3) or conducting drive-in services." See E.C.F. 2, para. 48, 49. Plaintiffs further allege that these "guidelines (though not mandatory) still impose the threat of state imposition and intimidation on the free form and practice of religion," thus still constituting a violation of the U.S. and Illinois Constitutions, and that Defendant still makes these strong "suggestions" under the color of state law. E.C.F. 2, para 49. Defendant continues to enforce his restrictions under the five-phase plan, and nothing within the wording of his alleged May 29 exemption or "guidelines" for religious activities removes the threat of state imposition or intimidation of fines or penalties for religious activities. The Defendant's restrictions have scared so many citizens in Illinois that most churches or religious organizations still abide by the rules and restrictions applied to everyone as if the May 29 exemption never occurred. See E.C.F. 2, para 48, 49. Defendant's reliance on *Elm Pentecostal Church*, 962 F. 3d at 347, is also not applicable here because, as discussed above, *Elm Pentecostal* does not address the fact that the Governor has chosen Constitutional winners and losers in what groups must obey his orders. It does not address the power of the executive being unlimited and able to restrict fundamental rights until there is a complete and total cure of the virus and all risks and hazards of life as we know it. And it does not address the fact that the Governor's pre-May 29, 2020, orders unquestionably limited the Plaintiffs' religious exercise in violation of the State and Federal Constitution.

Defendant can try and hide behind his May 29, 2020 exemption, but the damage has already been done. Plaintiffs' rights to the free exercise of religion have already been violated prior to that

14

date. To be actionable, plaintiffs due process rights must have actually been violated. *See Arnold v. Truemper*, 833 F. Supp. 678, 683 (N.D. IL 1993). Plaintiff's rights have been violated here, the unique part of the May 29th exemption is that it does not cure the violations that occurred prior, and it has had no effect on the public that already assumes church services are still bound by Defendant's "non-mandatory guidelines." Defendant has set forth no legitimate basis to dismiss any of Counts I, II, or IX of Plaintiffs' Complaint for failure to state a cause of action. The Plaintiffs have asserted sufficient facts to support each. As such, Defendant's motion in this regard must fail.

### B. Plaintiffs Successfully State Claims in Counts III, IV, V, and VI

Defendant argues that Plaintiff failed to allege a cause of action for violation of free speech and the right to assemble in Counts III through VI of the Complaint. Defendant's motion in this regard, while asserting his arguments on the merits, as to why he disagrees with the facts alleged in the Complaint, does nothing to support a reason why these Counts should be dismissed for failure to state a cause of action under Rule 12(b)(6).

Plaintiffs have adequately alleged that their fundamental rights of free speech and assembly have been severely violated by Defendant's continuing actions. The Defendant's challenge to the merits of those allegations within his motion does not warrant dismissal as the facts pled in the Complaint must be deemed as true. Plaintiffs' have alleged sufficient facts to allege violations of free speech as outlined at length in the Complaint. See ECF 2, para 89 (a) – (f) and para 97 (a) – (f). Defendant has set forth no legitimate basis to dismiss any of Counts III through VI of Plaintiffs' Complaint for failure to state a cause of action. The Plaintiffs have asserted sufficient facts to support each, including how the mandate to wear a face mask is a violation of free speech

because it does convey a message of fear and submission especially when there is no consensus in the so called "science" that masks have any effect whatsoever in the spread of the virus. Additionally, alleging that the right to assemble has not been infringed upon is inaccurate to say the least. Defendant's orders clear restrict the number of people that can convene in a certain group. If this is not a violation of the right to assemble, it is unclear what would be. Defendant's argument to the merits of these facts is improper argument for a 12(b)(6) motion. The facts of the Complaint must be deemed to be true with respect to this motion. As such, Defendant's motion in this regard with respect to Plaintiffs' free speech and freedom to assemble claims must fail.

### C. Plaintiffs Successfully State a Claim in Count VII

The Plaintiffs have successfully stated a cause of action for violation of procedural and substantive due process in Count VII. The actions of the executive branch of government violate substantive due process where it violates a fundamental right or liberty, and it is arbitrary and irrational. *Campos v Cook County*, 932 F.3d 972, 975 (7th Cir. 2019). Substantive due process, like procedural due process, depends on the existence of a fundamental liberty interest. *See Washington v Glickberg*, 521 U.S. 702, 719-22 (1997). Plaintiffs have adequately pled throughout their Complaint, including but not limited to the following paragraphs, that the orders and plans executed by Defendant are blatantly unreasonable and are arbitrary and irrational. See ECF 2, para, 3, 4, 5, 8, 9, 34, 45, 46, 48, 49, 50, 51, 57 (a) – (p), 58 (a) – (j), and 65.

Defendant's reliance on *Brokaw v Mercer City* concerning infringement on fundamental rights is misplaced and not applicable. As Plaintiff alleged within the Complaint, under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause

16

include most of the rights enumerated in the Bill of Rights. *See Duncan v. Louisiana*, 391 U.S. 145, 147–149 (1968). E.C.F. 2, para 116. Also, these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs. *See, e.g., Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 484–486 (1965). Plaintiffs' rights to freedom of religion, assembly, speech, and travel are fundamental rights protected by the U.S. Constitution. *See, e.g., Aptheker v. Secretary of State*, 378 U.S. 500, 520 (1964); Kent v. Dulles, 357 U.S. 116, 127 (1958). The Due Process Clause of the Fourteenth Amendment includes the right to be free from any legal guidelines bestowing unfettered discretion on government officials about interpretation or enforcement of fundamental rights. Contrary to Defendant's assertion, the Plaintiffs' allegations of violations of substantive due process based on their Constitutional rights are proper and plausible.

Additionally, Defendant claims that the only unique violation raised in Count VII is the right to travel and that the same fails because Defendant's orders do not restrict travel in any way. This argument is absurd on its face unless the Defendant is relying on his and his family's unfettered travel during the heart of the pandemic to Wisconsin, Florida and other locations while confining Illinois citizens to their homes. The list of restrictions on travel since the onset of the Defendant's orders is immense. Plaintiffs' are restricted from traveling to stores, restaurants, bars, sporting events, movies, plays, operas, beaches, hair salons, schools, parks, unless of course, they may have been lucky enough in some circumstances to be the 10th or 50th person depending on the phase. Since the filing of this suit, Defendant has imposed several "quarantine" bans on individuals who traveled from different states and returned to Illinois because of the "increased threat." To this day, most of these restrictions are still in effect. The Defendant cannot evade this suit based on his attitude that "everything is normal" and that there are no restrictions on travel.

17

The entirety of Plaintiffs' Complaint alleges that Defendant's actions have been arbitrary and irrational, and the fact that the Governor is allowed to exert these powers with no end date in sight is on its face a "most egregious and outrageous government action," and "shocks the conscience" which satisfy the tests cited by Defendant in *Campos v Cook Cty*, and *Flint v City of Belvidere*. Count VII adequately alleges a claim of procedural and substantive due process. Nothing within Defendant's motion states a basis to dismiss the same under Rule 12(b)(6).

### D. Plaintiffs Successfully State a Claim in Count VIII

Plaintiffs have alleged sufficient facts to support their claim of violation of the equal protection clause of the Fourteenth Amendment in Count VIII. Defendant's contention that the Plaintiffs do not allege that they are being treated differently from any similar group or persons is inaccurate. A clear reading of the Complaint and Count VIII shows this. The Governor may not like the difficult fact in hindsight that he treated Antifa and other protestors differently than Plaintiffs, but the fact remains true that he did. The argument that Plaintiffs are obligated to prove that they are similarly situated to Antifa or other protesters and wish to take up similar activities as those groups in nonsensical. If Plaintiffs' described their daily activities of being free to go to stores, restaurants, bars, sporting events, movies, plays, operas, beaches, hair salons, schools, or parks, and operate their businesses without burdensome restrictions as protests, would the Governor not enforce his orders against them? What does the purpose of the gathering of people have to do with anything? The Governor admits, as his orders state, that the "legitimate governmental purpose" he wants to achieve is to combat the spread of Covid-19...by limiting contact between people. E.C.F. 15-2 pg 23. If limiting contact between people is the objective, the Governor did nothing to restrict the protests and in fact joined them, yet he continues to trample on the Plaintiffs and their businesses. Defendant also allows large retail stores, which he deems

18

as "essential" to operate with no limit as to the number of people that could gather inside. Yet small businesses selling identical products are forced to abide by the limits. The largest retailers remained open to attract large crowds, while smaller specialty retailers—like some of the Business Plaintiffs here—were required to close. These types of "distinctions are arbitrary in origin and application. They do not rationally relate to defendants' own stated goal. They violate the Equal Protection Clause of the Fourteenth Amendment." *Cty. of Butler v. Wolf*, 2020 U.S. Dist. LEXIS 167544, *99

The Governor also appoints himself as the sole judge of what is essential and what is not essential. Obviously, he finds that the protests aligned with his political beliefs are essential by not enforcing any of his orders limiting contact between people. By marching side by side Antifa himself, he violated his own orders. By his own admission, Defendant is not equally enforcing his orders, which, as Plaintiffs pled, is a violation of the Fourteenth Amendment. The difference in treatment between different groups of people, as alleged by the Plaintiffs and deemed as true for this motion, is adequate to survive dismissal.

The Plaintiffs allege that they have and are being treated differently throughout the Complaint. See ECF 2, para: 8, 9, 56, 57(k)-(m), 58(a)-(k), 128. There is no basis for concluding that the Plaintiffs' due process claim is duplicative or a re-packaging of their First Amendment Claims. Defendant's reliance on *Bogart v Vermillion Cty.* and *Conyers v Abitz* are not applicable. *Bogart* addressed a Democrat financial resources Director in Vermillion County who was fired after the election of Republican County Board president. She was not fired for political affiliation but because her position involved substantial policymaking responsibility. *Bogart* at 213. *Conyers* addressed a plaintiff prisoner who alleged mistreatment by prison officials. The *Bogart* and *Conyers* claims are glaringly different from the claims made by Plaintiffs here, and to allege that

the First Amendment and Due Process claims mirror each other here is inaccurate, as Plaintiffs allege violations of their fundamental rights under the First Amendment separately from the differential treatment by Defendant concerning his picking of winners and losers in violation of the due process clause. Therefore, Count VIII should not be dismissed on that basis.

Defendant's further reliance on the recent cases of *South Bay* and *Elm* is also not applicable here for the reasons previously discussed. Those opinions were not decided on the merits, nor did they address the differential treatment that Plaintiffs have alleged here regarding Defendant's picking of Constitutional winners and losers. In the end, Defendant presents no legitimate basis to warrant dismissal of Count VIII, and the Plaintiffs should be allowed to proceed on the merits of the claim.

### E.  Plaintiffs Successfully State a Claim in Count X

The Fifth Amendment of the Constitution of the United States grants to the citizens of the United States the right to just compensation for taking of private property for public use. *Armstrong v. United States*, 364 U.S. 40 (1960). Article I Section 15 of the Constitution of the State of Illinois grants to citizens of the State of Illinois the protection of private property without just compensation and further that a jury shall determine the just compensation. Ill. Const. 1970, art. I, sec. 15.

Plaintiffs, and all similarly situated businesses and individuals from across the State of Illinois, are members of two distinct classes adversely affected by Defendant Pritzker's actions: 1) affected business ordered to shut down or greatly limit their capacity by the coronavirus closure orders and Five-Phase-Plan; and 2) individual workers displaced from their gainful employment as a result of the same Executive Orders and plans. The Plaintiffs stand on the precipice of economic collapse as a direct result of the actions taken by Governor Pritzker.

Defendant Pritzker's Executive Orders and Five-Phase-Plan, proclaimed by Defendant to protect the public safety, health, and welfare of Illinois, mandated that all non-essential businesses immediately cease operations at their physical locations, that their employees do not work at these physical locations, and that this mandate is to stay fully closed remains in force indefinitely or until a vaccine is obtained.   There is no guarantee that a vaccine will ever be achieved. Additionally, the property of Plaintiffs' businesses, and all similarly situated businesses in Illinois, which the Defendant's orders render unusable, included both the real property in which the businesses are physically located and the tangible property housed at such locations. This tangible property includes but is not limited to machinery, inventory, tools, business records, and other forms of tangible equipment used in the operation of each business.

Despite issuing the Executive Orders for a public purpose, the Defendant did not provide compensation for those who suffered substantial – and perhaps total – diminution of value in their property interest as a result. The Executive Orders by their operative provisions deprived Plaintiff Businesses, and all similarly situated businesses in Illinois of all economically beneficial use of their property and deprived Plaintiffs and all similarly situated individuals in Illinois of their livelihoods for an undefined period.   Businesses were ordered to close under threat of fines, unspecified criminal penalties, and denial of access to disaster relief funding and services, which penalties were announced publicly and contemporaneously with the release of the Executive Orders. Defendant Pritzker's actions were not designed to serve the Plaintiffs' private interests, nor did the Defendant identify any private interest served by his actions. The Executive Orders constitute a regulatory taking implemented for a recognized public purpose. Therefore, the failure to pay just compensation contravenes the Takings Clause of the Fifth and Fourteenth Amendments of the United States Constitution and the First Article of the Illinois Constitution.   As such, the

Plaintiffs have adequately pled a takings claim in Count X, and Defendant's motion must be denied in this regard. If this Honorable Court disagrees, Plaintiff respectfully asks for leave to file an amended pleading.

### F. Plaintiffs Successfully State Claims in Counts XI and XII and are entitled to injunctive and Declaratory Relief

Defendant's argument in support of his contention that Counts XI and XII should be dismissed is merely a recital of the talking points as to why the Covid-19 pandemic is such a severe harm. Notwithstanding the myriad of scientific evidence that counters the Governor's conclusions in that regard, which he simply ignores, Defendant's argument tellingly omits the two dominant issues in the Plaintiffs' Complaint. That being Defendant Pritzker's acts of his selective picking of Constitutional winners and losers as to what groups his mandates and orders apply to, as well as the fact that there is no proposed end date of Defendant's restrictions. The conclusion of the Defendant's five-phase-plan states that until a vaccine is obtained, and there is no guarantee that a vaccine will ever be obtained, things will never return to pre-Covid conditions.

The Defendant's power cannot be absolute in restricting the Plaintiffs fundamental rights indefinitely based solely on his proclamation that he is trying to prevent more lives from being "shattered." Where does this logic end? Lives are shattered every day in Illinois and across the United States for many reasons. Many people die every day from heart disease. Will the Governor invoke similar executive orders to prevent the sale of cheeseburgers and milkshakes? Many people die every day from lung cancer. Will cigarettes be banned? What about driving automobiles? Life, just by its very nature, is a dangerous thing. Our fundamental Constitutional rights can't be put on hold indefinitely because danger exists. For these reasons, and those discussed above and

alleged in Plaintiffs' Complaint, Plaintiffs can succeed in showing that the Governor's orders should be enjoined.  Thus, Counts XI and XII should not be subject to dismissal.

### Conclusion

Governor Pritzker's power is not limitless.  The fundamental rights of the Constitution trump his power and transcend even the pandemic itself.  We cannot allow these precious rights to be extinguished by fear.  That should be unacceptable to all of us, regardless of our political leanings.  Defendant has set forth no basis by which this Honorable Court should grant its motion to dismiss, and this matter has a right to proceed on the merits. Defendant's motion must be denied in its entirety.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order denying Defendant's Motion to Dismiss in its entirety and allow this matter to proceed on the merits.  In the alternative, if this Honorable Court deems that Plaintiffs' Complaint is deficient in any way or is prone to grant Defendant's motion in whole or in part, Plaintiffs' respectfully ask for leave to file an amended complaint, and for any further relief, the Court deems appropriate and just.

Respectfully Submitted,
**DAWN NOWLIN**, et. al.

By:     **/s/ John C. Kreamer /s/**
        **/s/ Joseph E. Urani /s/**
        Attorneys for Plaintiffs

        John C. Kreamer, #6270111
        Joseph E. Urani #6278626
        Kreamer Law Group, LLC
        1100 E. Warrenville Rd.  Suite 135
        Naperville, IL  60563
        (630) 995-3668/(630) 597-9532

23

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 18, 2020, he electronically filed Plaintiff's Response to Defendant's Motion and Memorandum to Dismiss Plaintiffs' Complaint with the Clerk of Court using the CM/ECF system, which will send notification of such filing to any and all registered CM/ECF participant(s).

**/s/ John C. Kreamer /s/**