IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| **DAWN NOWLIN,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. **1:20-CV-1229** |
| ) | Honorable James E. Shadid |
| **JAY ROBERT PRITZKER,** ) | |
| Governor of Illinois, in his Official ) | |
| Capacity, ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Now before the Court are Defendant Jay Robert Pritzker's Motion to Dismiss the Complaint with Prejudice (D. 13[1]), Memorandum in Support of the Governor's Motion to Dismiss (D. 17), and Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss and Memorandum in Support of the Same (D. 20). For the reasons that follow, Defendant's Motion to Dismiss is GRANTED, and Plaintiffs have leave to amend the surviving counts.

## BACKGROUND

This lawsuit represents one of several legal challenges to a series of executive orders issued by the Defendant, Illinois Governor Jay Robert Pritzker ("Governor"), over the past several months in response to the public-health emergency presented by COVID-19. The Plaintiffs in this case consist of Dawn Nowlin, a resident of Heyworth, McLean County, Illinois, in her individual capacity and as owner of Houdinis Spirits in LeRoy, McLean County, Illinois; Karla Boldt, a resident of Waterman, DeKalb County, Illinois; Rachel Olivares, a resident of Naperville, DuPage County, Illinois; April Schweitzer, a resident of Champaign, Champaign County, Illinois; Melissa Sharma, a resident of Peoria Heights, Peoria County, Illinois; Jesse Kadera, a resident of Antioch,

---

[1] References to the case docket are abbreviated as "(D. __)".

Lake County, Illinois; Peter Ptak, a resident of Lisle, DuPage County, Illinois; James Shipley, a resident of Toloma, Champaign County, Illinois; Elaine Conforti, in her individual capacity and as the owner of Style Hair Studio in Palatine, Cook County, Illinois; Cheryl Thompson, in her individual capacity and as the owner of Bonofide Cleaning, L.L.C., in Cobden, Union County, Illinois; Caroline Szwajlik, in her individual capacity and as the owner of Karen's Emergency Services, in Burr Ridge, DuPage County, Illinois; and Quinton Mister, a resident of Naperville, DuPage County, Illinois (collectively, "Plaintiffs"). (D. 2 at 6). Together, Plaintiffs have sued the Governor seeking nominal and compensatory damages, fees and costs, along with injunctive and declaratory relief against enforcement of the challenged executive orders on the grounds that the orders violate Plaintiffs' rights under the Free Exercise Clause of the First Amendment and its equivalent under the Illinois Constitution; the Free Speech clause of the First Amendment and its equivalent under the Illinois Constitution; the "Freedom to Assemble" clause of the First Amendment and its equivalent under the Illinois Constitution; the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S. Constitution; the Illinois Religious Freedom Act, 775 ILCS 35; and unjust taking of property under the Fifth Amendment of the U.S. Constitution and Article 15, Section 1 of the Illinois Constitution.

## I.     The Governor's Executive Orders

The State of Illinois, along with the rest of the country and the world, currently finds itself in the midst of a global pandemic caused by the transmissible coronavirus SARS-CoV-2 ("COVID-19"). As alleged by the Plaintiffs, "[a]s time progressed, it has become evident that the coronavirus turned out to be a dangerous disease, but a manageable one." (D. 2 at 3). In an attempt to reduce the spread of the virus, the Governor issued a series of proclamations and executive orders summarized as follows:

- On March 9, 2020, the Governor issued a proclamation declaring a disaster in the form of a public-health emergency impacting all of Illinois' 102 counties, proclaiming authority under the Illinois Emergency Management Agency Act. *Id.* at 8.

- On March 20, 2020, the Governor issued Executive Order 2020-10, which ordered Illinois residents to shelter in place at their residences. EO 2020-10 also ordered all "non-essential" businesses, as defined in the order, to cease all activities through April 7, 2020. *Id.* at 9.

- On April 1, 2020, the Governor issued a second proclamation declaring a disaster continued to exist in Illinois and a second Executive Order 2020-18, which continued and extended EO 2020-10, without alteration, until April 30, 2020. *Id.*

- On April 30, 2020, the Governor issued a third proclamation, declaring again a disaster continued to exist in Illinois which would remain in effect for 30 days. The same day, he issued Executive Order 2020-32, which was functionally identical to EO 2020-10 and 2020-18. *Id.* at 10.

- On or around May 5, 2020, the Governor issued a five-phase-plan regarding steps to reopen Illinois. The plan continued the closures and prohibitions for an unspecified length of time and indicated that when the State reached phase 5, things would seemingly return to normal. *Id.* at 11.

- On May 29, 2020, the Governor issued a fourth proclamation, declaring again a disaster continued to exist in Illinois which would remain in effect for 30 days. The same day, he issued Executive Order 2020-38, which states that "[a]ny gathering of more than ten people is prohibited unless exempted by this Executive Order." EO 2020-38 also eliminated the requirement that exempts the free exercise of religion, emergency functions, and governmental functions. (D. 2-9).

- On June 26, 2020, the Governor issued Executive Order 2020-43, which increased the gathering limit to fifty people but retained the exemption. EO 2020-43 was set to expire by its own terms on August 22, 2020, but the Governor issued EO 2020-52 that extended EO 2020-43 in its entirety through September 19, 2020. On September 18, 2020, the Governor again issued an Executive Order, EO 2020-55, to again extend EO 2020-43 through October 17, 2020.

Plaintiffs sued the Governor to challenge the Executive Orders and five-phase-plan, alleging they violate their rights under the U.S. Constitution, Illinois Constitution, and state law. They filed their Complaint on June 15, 2020, and a Motion for Temporary Restraining Order and Preliminary Injunction on August 7, 2020. (D. 2; D. 7). At the parties' request, the Court ordered

an expedited briefing schedule for Defendant to respond to the Complaint and Motion for Temporary Restraining Order and Preliminary Injunction on August 12, 2020. Defendant filed a Motion to Dismiss the Complaint on August 21, 2020. (D. 13). Plaintiff then filed a Response in Opposition to Defendant's Motion to Dismiss on September 18, 2020. (D. 20). This Order follows.

## LEGAL STANDARD

To properly assert a claim in a complaint, the plaintiff must present "a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought." Fed. R. Civ. P. 8. Rule 8"does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). While a court is to accept all allegations contained in a complaint as true, this principle does not extend to legal conclusions. *Iqbal,* 556 U.S. at 667.

The Federal Rules further permit a defendant to move to dismiss a claim if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Iqbal,* 556 U.S. at 667 (citing *Twombly,* 550 U.S. at 570). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 679. A threadbare statement of a claim supported by a conclusory statement is insufficient. *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

Moreover, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court may not consider extrinsic evidence. *See* Fed. R. Civ. P. 12(b)(6). If a court considers matters outside of the pleadings, "the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12 (12)(d). However, a court may "take judicial notice of matters of public record," *United States v.*

*Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991), and it may do so without converting a motion to dismiss into one for summary judgment. *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *Henson v. CSC Credit Servs*. 29 F.3d 280, 284 (7th Cir. 1994). This exception has allowed courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard. *Gen. Elec. Capital Corp.*, 128 F.3d at 1081. Here, the Executive Order in effect at the time the Complaint was filed has since expired with two subsequent Executive Orders being issued in its place, the most recent on September 18, 2020. Given this document is a part of the public record, the Court will take judicial notice and consider it without converting the present motion to a motion for summary judgment.

## DISCUSSION

### I.   MOOTNESS & STANDING

As a threshold matter, the Governor questions whether Article III authorizes this Court to adjudicate Plaintiffs' claims. In doing so, he articulates two distinct theories. First, the Governor says portions of Plaintiffs' Complaint are moot considering the new provisions in the Executive Order relating to the free exercise and less limiting restrictions set forth in the Governor's more recent executive orders. Second, the Governor submits that Plaintiffs lack standing to sue due to their failure to allege they have suffered an "injury in fact" that is "concrete and particularized," or "affecting the plaintiff in a personal and individual way" and "actual or imminent, not conjectural or hypothetical."

#### A.   *Mootness*

First, the Governor contents that Plaintiffs' claims regarding the exercise of religion have been mooted by the issuance of executive orders that provided a new framework for religious

expression and which supersede all previous Covid-19 executive orders. With respect to free exercise of religion, EO 2020-38 expressly exempts the free exercise of religion, and that exemption has been adopted in all subsequent executive orders since issued.

To the extent Plaintiffs seek declaratory and injunctive relief with respect to COUNT I regarding their Free Exercise of Religion claim, their claims are indeed moot. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. City of N.Y.,* 2020 WL 1978708, at *1 (U.S. Apr. 27, 2020) (holding that a request for declaratory and injunctive relief was mooted by amendment of the statute). To the extent Plaintiffs seek monetary damages for COUNT I, their request is DISMISSED for the reasons stated below. Therefore, COUNT I of Plaintiffs' Complaint is DISMISSED as moot.

To the extent Plaintiffs seeks declaratory and injunctive relief with respect to COUNT III and V for activities that constitute the "free exercise of religion," but are brought under First Amendment Free Speech and Freedom to Assemble claims, those specific portions of COUNTS III and V are also dismissed as moot, including paragraphs 89(a) and (b), and 103(a),(b), (c), and (d). (D. 2 at 27, 31). Plaintiffs are granted leave to file an amended complaint regarding the remaining portions of COUNTS III and V in accordance with the terms of this Order.

The Court further notes that the Complaint continually references the Executive Orders and five-phase-plan in their continued extension since March 9, 2020… are not narrowly tailored to accomplish the government interest, compelling or otherwise, in the least restrictive manner. (D. 2 at 25, 27, 32, 38). These allegations ignore the more recent amendments to the Executive Orders that have less restrictive measures in place and therefore, any amended Complaint filed should reflect the most terms of the most recent executive order.

    *B. Standing*

Next, the Governor contends that Plaintiffs lack standing. To establish standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). The Governor's argument focuses on the first element.

Generally, "an injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014) (internal quotations omitted). But an "allegation of future injury may suffice if the threatened injury is certainly impending or there is a substantial risk that harm will occur." *Id.* (emphasis deleted, and internal quotation marks omitted). "It is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson,* 415 U.S. 452, 459 (1974).

Defendant argues that "Plaintiffs have not alleged a single particularized injury in the entire Complaint." (D. 15-1 at 11). Rather, the "sole detail Plaintiffs provide to differentiate the individual Plaintiffs is what municipality and county they each live in." *Id.* at 11-12. In response, Plaintiffs argue generally they have established standing in that their "Complaint resounds in loss of their fundamental Constitutional rights under the First Amendment." (D. 19-1 at 14). The Court notes that only one Plaintiff resides in Peoria and only four of the twelve Plaintiffs reside in the Central District of Illinois. The majority of Plaintiffs reside in the Northern District of Illinois, and therefore, the Court questions why their causes of action were brought in the Central District. The Court further notes that these exact or substantially similar issues have already been addressed and ruled on and in the Governor's favor in the Northern District of Illinois in numerous cases. In the event all Plaintiffs intend to bring an Amended Complaint before this Court they should be

prepared to explain why it was filed in the Central District, rather than where they reside and how the facts of their case would lead to a different conclusion than that already reached in the Northern District and affirmed on appeal by the Seventh Circuit.

To establish injury in fact, Plaintiff must show that he suffered an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017). For an injury to be "particularized," it must affect the plaintiff in a personal and individual way. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016). An injury in fact must also be "concrete," which means it must actually exist. *Id.* The injury must be "real," not "abstract," but not necessarily tangible. *Groshek*, 865 F.3d at 886.

The Court agrees with the Governor that Plaintiffs have not pled a particularized or concrete injury in any Counts of the Complaint. Specifically, nothing has been pled by any of the Plaintiffs indicating that he or she has been affected in a "personal and individual way" by the Executive Orders, nor have they pled any injury from the State that exists. As noted by the Governor, standing must be based on an injury more particularized and more concrete than the mere assertion that the "Governor's executive orders deprived Plaintiffs of First Amendment and other fundamental rights and take their property without just compensation." (D. 15-1 at 12). Further, Plaintiffs, in their Response, failed to respond to the Governor's argument on these points.

## II.     ELEVENTH AMENDMENT – SOVEREIGN IMMUNITY SHIELD

### A. *Sovereign Immunity - State Law Claims*

Plaintiffs assert four claims under Illinois state law in COUNTS II, IV, VI, and IX and improperly combine two separate state and federal claims in COUNTS X and XI. For purposes of the instant motion, the Governor does not challenge the state-law claims on their merits. Instead,

he asserts that Plaintiffs are barred by the doctrine of sovereign immunity from bringing those claims against him in federal court. The Court agrees.

The Eleventh Amendment grants states immunity from suit in federal court unless the state consents to the suit or Congress has abrogated the state's immunity. *Seminole Tribe v. Florida,* 517 U.S. 44, 54 (1996). This immunity applies regardless of the nature of the relief sought. *Penhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98 (1984). Moreover, sovereign immunity not only bars suits in which the state itself is named as a defendant; it also bars suits in which a state official is the named defendant, but any relief would operate against the state itself. *Id.* at 101. A suit against a state official acting in his official capacity is generally considered a suit against the state for which principles of sovereign immunity apply. *Joseph v. Bd. of Regents of Univ. of Wisconsin Sys.,* 432 F.3d 746, 748 (7th Cir. 2005).

Counts II, IV, VI, IX and portions of Counts X and XI brought under Illinois law of Plaintiffs' Complaint assert claims against the Governor in his official capacity for alleged violations of Illinois state law. Thus, the Eleventh Amendment sovereign immunity bars Plaintiffs from pursuing their state law claims against the Governor in federal court. Therefore, COUNTS II, IV, VI, and IX are DISMISSED in their entirety. The state law claims brought under COUNTS X and XI are also DISMISSED, with leave granted to the Plaintiffs to refile an amended complaint containing the remaining federal claims contained in COUNTS X and XI in accordance with this Order.

### B.  *Sovereign Immunity - Monetary Damages*

In the remaining federal claims set forth in COUNTS III, V, VII, and VIII of the Complaint, Plaintiffs seek the following relief:

> 93. 107. 123. 132. Under 42 U.S.C. §§ 1983 and 1988, Plaintiffs and all similarly situated citizens are entitled to declaratory relief and temporary, preliminary, and

> permanent injunctive relief invalidating enforcement of the Executive Orders and five-phase-plan.
>
> 94. 108. 124. 133.  Plaintiffs, and all similarly situated citizens are entitled to nominal damages for this infringement of their rights. Plaintiffs were forced to engage the services of private counsel to vindicate their rights under the law and are therefore entitled to an award of attorneys' fees under 42 U.S.C. § 1988.
>
> WHEREFORE, Plaintiffs… demand judgment against Defendant, for nominal damages, compensatory damages, costs, and attorneys' fees, in excess of $75,000.00, order the just compensation to the Plaintiffs by a jury under Illinois law, and for all and any additional relief…

(D. 2 at 24-25, 28, 32-33, 37-40).

The Eleventh Amendment bar extends to suits for money damages against state officials sued in their official capacity, because "a judgment against a public official 'in his official capacity' imposes liability on the entity that he represents…." *MSA Realty Corp. v. State of Ill.,* 990 F.2d 288, 291 (7th Cir. 1993) (citing *Brandon v. Holt,* 496 U.S. 464 (1985). Here, Plaintiffs have brought a suit against the Governor, acting in his official capacity. A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon,* 469 U.S. at 471. As such, it is no different from a suit against the State itself.

Absent a waiver by the State, the Eleventh Amendment bars a damages action against a State in federal court. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985).  This bar remains in effect when State officials are sued for damages in their official capacity. *Id.* However, while state officials may not be sued for money damages, they may be sued in their official capacities for injunctive relief. *MSA Realty Corp.,* 990 F.2d at 291; *Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989); *Graham,* 473 U.S. at 167 n. 14.

Therefore, COUNTS III, V, VII, and VIII are DISMISSED WITHOUT PREJUDICE with leave to amend the complaint to plead the appropriate relief available under federal law and in

accordance with this Order. In the event Plaintiffs are successful on the merits, the Court will then address the availability of attorneys' fees under 42 U.S.C. § 1988.

## CONCLUSION

For the reasons set forth above, Defendant's [13] Motion to Dismiss the Complaint is GRANTED IN PART. COUNTS III, V, VII, VIII, X, XI, and XII of Plaintiffs' Complaint are DISMISSED WITHOUT PREJUDICE. Plaintiffs are given 21 days from the date of this Opinion to file an Amended Complaint addressing the deficiencies identified above. Nothing in this Order shall be construed to preclude the Plaintiffs from bringing their state law claims in state court.

ENTERED this 1st day of October, 2020.    /s/ James E. Shadid
                                                                James E. Shadid
                                            United States District Judge