IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| **DAWN NOWLIN,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 1:20-CV-1229 |
| ) | Honorable James E. Shadid |
| **JAY ROBERT PRITZKER,** ) | |
| Governor of Illinois, in his Official ) | |
| Capacity, ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Pending before the Court are Defendant Jay Robert Pritzker's Motion to Dismiss for Failure to State a Claim (D. 28[1]), Memorandum in Support of the Governor's Motion to Dismiss (D. 30), Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss (D. 34), and Defendant's Reply (D. 36). For the reasons that follow, Defendant's Motion to Dismiss is GRANTED.

## BACKGROUND

This lawsuit represents one of several legal challenges to a series of executive orders issued by the Defendant, Illinois Governor Jay Robert Pritzker ("Governor"), since March of 2020 in response to the public-health emergency presented by COVID-19. Plaintiffs are Illinois residents, some of whom are business owners. Plaintiffs have sued the Governor seeking nominal and compensatory damages, fees and costs, along with injunctive and declaratory relief against enforcement of the challenged executive orders on the grounds that the orders violate Plaintiffs' rights under the Free Exercise Clause of the First Amendment (Count I); the Free Speech clause of the First Amendment (Count II); the "Freedom to Assemble" clause of the First Amendment

---

[1] References to the case docket are abbreviated as "(D. __)".

(Count III); the Due Process Rights under the Fourteenth Amendment (Count IV); the Equal Protection Clause of the Fourteenth Amendment (Count V) and the requirement for just compensation for taking of property under the Fifth Amendment of the U.S. Constitution (Count VI).

The State of Illinois, along with the rest of the country and the world, currently finds itself in the midst of a global pandemic caused by the transmissible coronavirus SARS-CoV-2 ("COVID-19"). In an attempt to reduce the spread of the virus, the Governor issued a series of proclamations and executive orders. These orders have changed as the understanding of the virus has changed and the strain on the healthcare system has changed. On March 9, 2020, the Governor declared a disaster in the form of a public-health emergency impacting all of Illinois' counties, proclaiming authority under the Illinois Emergency Management Agency Act. (D. 24-1). On March 20, 2020, the Governor issued Executive Order 2020-10, which ordered Illinois residents to stay at home except for certain essential activities. Executive Order 2020-10 also ordered all "non-essential" businesses, as defined in the order, to cease all activities through April 7, 2020. (D. 24-2). The Governor issued additional proclamations that served to extend the March 20th Order until May 5, 2020. (D. 24-3). On April 30, 2020, the Governor issued an order that allowed people to leave their homes to "engage in the free exercise of religion" as long as there were no more than ten people gathering. (D. 24-4 at 5). On May 5, 2020, the Governor issued a five-phase-plan regarding steps to reopen Illinois. The plan continued the closures and prohibitions for an unspecified length of time and indicated that when the state reached phase 5, things would seemingly return to normal. (D. 24-5). On May 29, 2020, the Governor issued Executive Order 2020-38, which states that the order does not limit the free exercise of religion and the previous

cap of ten individuals was now just a recommendation for religious services. (D. 30-1).[2] Currently, the five-phase plan remains in place with religious services still exempt from the limits of the Executive Orders.

Plaintiffs sued the Governor to challenge the Executive Orders and five-phase-plan, alleging the they violate their rights under the U.S. Constitution. They filed their Complaint on June 15, 2020, and a Motion for Temporary Restraining Order and Preliminary Injunction on August 7, 2020. (D. 2; D. 7). The Governor filed a Motion to Dismiss the Complaint on August 21, 2020. (D. 13). On October 1, 2020, the Court dismissed Plaintiffs' Complaint with leave to refile. (D. 20). The Court also denied the Temporary Restraining order and allowed Plaintiffs to file an amended motion for preliminary injunction. On November 5, 2020, Plaintiffs filed an Amended Complaint and an Amended Motion for Preliminary Injunction (D. 25; D. 26). The parties agreed to an extended scheduling order and the Governor filed another Motion to Dismiss, Plaintiffs have filed a response, and the Governor has replied. Accordingly, this matter is now ripe for review.

## LEGAL STANDARD

To properly assert a claim in a complaint, the plaintiff must present "a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief

---

[2] A court may "take judicial notice of matters of public record," *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991), and it may do so without converting a motion to dismiss into one for summary judgment. *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *Henson v. CSC Credit Servs.* 29 F.3d 280, 284 (7th Cir. 1994). This exception has allowed courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard. *Gen. Elec. Capital Corp.*, 128 F.3d at 1081. Here, Plaintiffs attached several of the Executive Orders to the Amended Complaint but omitted several more recent executive orders. The Governor attached some of the orders to their Motion to Dismiss and the Governor has implemented additional orders since he filed his motion. Given that the Executive Orders are matters public record, integral to this case, and not reasonably subject to dispute the Court will take judicial notice and consider them without converting the present motion to a motion for summary judgment.

sought." Fed. R. Civ. P. 8. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). While a court is to accept all allegations contained in a complaint as true, this principle does not extend to legal conclusions. *Iqbal,* 556 U.S. at 667.

The Federal Rules further permit a defendant to move to dismiss a claim if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Iqbal,* 556 U.S. at 667 (citing *Twombly,* 550 U.S. at 570). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 679. A threadbare statement of a claim supported by a conclusory statement is insufficient. *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

## DISCUSSION

### I. Standing

Article III of Constitution restricts the jurisdiction of federal courts to hearing ongoing "cases or controversies." *Davis v. Federal Election Commission*, 554 U.S. 724, 732 (2008). As part of the requirement that plaintiffs present a live case or controversy, plaintiffs must establish that they have standing to bring a case, that is (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). As the party invoking federal jurisdiction, Plaintiffs have the burden of establishing these elements. *Id*. at 561. The Governor focuses on the first element, arguing that Plaintiffs have failed to plead sufficient facts to support their claims that they have suffered an injury.

Generally, an "injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014) (internal quotations omitted); *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)). But an "allegation of future injury may suffice if the threatened injury is certainly impending or there is a substantial risk that harm will occur." *Id.* (emphasis deleted, and internal quotation marks omitted). "It is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson,* 415 U.S. 452, 459 (1974). For an injury to be "particularized," it must affect the plaintiff in a personal and individual way. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). An injury in fact must also be "concrete," which means it must actually exist. *Id.* The injury must be "real," not "abstract," but not necessarily tangible. *Groshek*, 865 F.3d at 886 (quoting *Spokeo*, 135 S. Ct. at 1549–1549).

As the Governor noted, the Court initially dismissed Plaintiffs' Complaint for lack of standing because they did not plead sufficient facts indicating that any of the Plaintiffs had been affected in a personalized or individual way. (D. 30 at 11). In an apparent attempt to remedy that failure, Plaintiffs add the same sentence twelve times, stating "The violation of the defendant discussed herein under the First, Fifth and Fourteenth Amendments have personally and individually affected [the plaintiff] in that she has lived in fear for her safety from reprisals and prosecution and fear that her inalienable rights have been removed with no end in sight." (D. 24 at 5–7). Asserting the same generic statement of harm twelve times in their amended complaint does not remedy the error that this Court recognized in the initial Complaint—the failure to plead individual, particularized harm about each of the plaintiffs in this case.

Despite receiving leave to file a new complaint, Plaintiffs still fail to provide specific allegations about how they or their businesses have been individually affected. Without any specific allegations of harm, Plaintiffs have not pleaded the "necessary allegations of demonstrable, particularized injury" required to assert an injury-in-fact. *Warth v. Seldin*, 422 U.S. 490, 508 (1975). Accordingly, their claims must be dismissed for lack of standing.

## II.     Mootness

A litigant also must have suffered an injury that is still capable of being redressed by a favorable judicial decision in order to meet the Article III justiciability requirement. *Ostby v. Manhattan Sch. Dist. No. 114*, 851 F.3d 677, 682 (7th Cir. 2017) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990)). "A case becomes moot when a court's decision can no longer affect the rights of litigants in the case before them and simply would be 'an opinion advising what the law would be upon a hypothetical state of facts.'" *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588 (7th Cir. 2006) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). The Governor argues that Plaintiffs' requests for injunctive relief regarding the restrictions on religious services are moot because those restrictions ended before Plaintiffs commenced this action. And, as explained below, Plaintiffs cannot recover monetary damages from the state in federal court. Accordingly, the Governor asserts that the Court cannot grant Plaintiffs any relief on that issue.

Plaintiffs assert that there were subjected to severe restrictions on their religious liberty between March 20, 2020 and May 28, 2020. The Seventh Circuit already observed that Executive Order 2020-38 exempts the free exercise of religion and that exemption has been adopted in all subsequent orders since May 28, 2020. *See Elim Rom. Pentecostal Church v. Pritzker*, 962 F.3d 341, 347 (7th Cir. 2020) (noting that under Executive Order 2020-38, "all arrangements for

worship are permitted"). Plaintiffs, however, did not file this suit until June of 2020. To the extent Plaintiffs seek injunctive relief, the issues Plaintiffs present regarding the prior restrictions on religious gatherings "are no longer 'live'" and Plaintiffs "lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *see also N.Y. State Rifle & Pistol Ass'n, Inc. v. City of N.Y.,* 140 S. Ct. 1525 (2020) (holding that a request for declaratory and injunctive relief was mooted by amendment of the statute).

      While a defendant generally cannot moot a case simply by ending the unlawful conduct once sued, Plaintiffs cannot claim the Governor changed his conduct "once sued" by Plaintiffs because the stay at home orders ceased prior to the start of this litigation, not in response to Plaintiffs' complaint. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). While in *Roman Catholic Diocese v. Cuomo*, the Supreme Court did consider whether New York's attendance cap on religious gatherings was constitutional even though the restrictions no longer in place, the circumstances of this case are different. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020). There, the state had a system of managing the COVID-19 outbreak by designating areas of the state as either in a "red," "orange," or "yellow" zone, with areas in red and orange zones having a strict 10 and 25 person limit on religious services. *Id*. Other establishments were not subject to such strict limitations. After the applicants asked the Supreme Court for relief, the Governor reclassified the areas in question to yellow, which permitted 50 percent capacity. *Id*. at 68. There, the Supreme Court found that the "applicants were under a constant threat that the areas in question will be reclassified" and observed that the Governor regularly changed the classification of particular areas without prior notice. *Id*. Accordingly, the Court held that the claim was not mooted by the easing of the restrictions. Here, however, the restrictions have not been in

place since before Plaintiffs brought this action over six months ago. Plaintiffs have not pointed the Court to any facts suggesting that the Governor will impose similar restrictions anytime in the near future, making this case readily distinguishable.

Therefore, Count I is dismissed as moot, and to the extent Plaintiffs seek declaratory and injunctive relief with respect to Count III and V for activities that constitute the "free exercise of religion," those claims are due to be dismissed as moot.

### III. Sovereign Immunity -Monetary Damages

As noted above, Plaintiffs are also unable to recover money damages in this case. Plaintiffs seek nominal and compensatory damages from the state of Illinois for each of their substantive claims. Here, Plaintiffs have brought a suit against the Governor, acting in his official capacity. A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 472 (1985). Accordingly, it is no different from a suit against the state itself. Absent a waiver by the state, the Eleventh Amendment bars a damages action against a state in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). This bar remains in effect when state officials are sued for damages in their official capacity. *Id.*; *see also MSA Realty Corp. v. State of Ill.*, 990 F.2d 288, 291 (7th Cir. 1993) ("a judgment against a public official 'in his official capacity' imposes liability on the entity that he represents…."). Accordingly, to the extent Plaintiffs seek monetary damages, those claims are denied.[3]

---

[3] While state officials may still be sued in their official capacities for injunctive relief, those claims fail for other reasons, as explained in this opinion. *See MSA Realty Corp.*, 990 F.2d at 291; *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Graham*, 473 U.S. at 167 n. 14.

IV. **Failure to State a Claim**

Plaintiffs lack standing to bring these claims, warranting dismissal of this case. In the alternative, however, Plaintiffs seek to again amend their complaint. Courts should "freely give leave [to amend] when justice so requires." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)). Courts have also endorsed the practice of allowing "at least one amendment regardless of how unpromising the initial pleading appears." *Id*. (citing *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)). However, the Court has already allowed Plaintiffs to amend their complaint and where it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted" district courts may decline to allow further amendments. *Id*. As explained below, Plaintiffs also fail to plead sufficient facts to support any of their Constitutional claims, persuading the Court that further amendments would be futile.

a. **Plaintiffs fail to state a Free Exercise of Religion claim (Count I).**

Plaintiffs complain that the prior limit on religious gatherings was a violation of their Constitutional Rights to freely exercise their religious. However, the Seventh Circuit has already reviewed similar challenges to the Governor's orders and did not find any Constitutional violations regarding the now expired ten-person limit on religious gatherings.

On May 16, 2020, the Seventh Circuit denied an emergency motion for an injunction pending appeal brought by churches challenging the Governor's restrictions on religious gatherings. *Elim Romanian Pentecostal Church v. Pritzker*, No. 20-1811, 2020 WL 2517093 at *1 (7th Cir. May 16, 2020). There, the Seventh Circuit found that plaintiffs had not shown a sufficient likelihood of success on the merits, explaining that the Executive Order "does not discriminate against religious activities, nor does it show hostility towards religion." *Id*. Instead, the court

9

observed that the order imposed neutral and generally applicable rules that applied "not only to worship services but also to the most comparable types of secular gatherings, such as concerts, lectures, theatrical performances, or choir practices, in which groups of people gather together for extended periods." *Id*. at 2. The Seventh Circuit further opined that worship services did not seem comparable to shopping activities in which people do not congregate for extended periods of time. *Id*. at 2.

The Seventh Circuit later had the opportunity to consider the matter more fully in a published opinion from June of 2020. *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 342 (7th Cir. 2020). Though the order limiting the size of religious services was no longer in place, the Court considered the plaintiffs' challenge to the executive order that limited gatherings to ten people since the order had recently changed while the case was pending. *Id*. The Seventh Circuit said that church services differ from grocery stores and pharmacies that were not subject to the ten-person cap in that people do not congregate in close proximity for extended periods in pharmacies and grocery stores. In considering whether warehouses and nursing homes were treated more favorably than religious services, the Seventh Circuit stated that "it is hard to see how food production, care for the elderly, or the distribution of vital goods through warehouses could be halted." *Id.* at 347. The Seventh Circuit further observed that "[r]educing the rate of transmission would not be much use if people starved or could not get medicine." *Id*. The Court continued that religious services were permitted when theatres and concert halls were closed and "by that standard the discrimination has been in favor of religion." *Id*. Accordingly, the Seventh Circuit affirmed the lower court's denial of the plaintiff's motion for a preliminary injunction regarding the ten-person limit on religious services.

While the ten-person limit is no longer in place, Plaintiffs' challenges to the order limiting the size of religious services would fail for these reasons as well.

### b. Plaintiffs fail to state free speech or assembly claims (Count II-III)

Plaintiffs also do not plausibly plead free speech or assembly claims. The Seventh Circuit has already found that the Governor's executive orders concern non-expressive conduct, not speech. *See Morgan v. White*, 964 F.3d 649 (7th Cir. 2020) (per curiam). In *Morgan*, the Seventh Circuit rejected a challenge to the state's deadline for submitting signatures to place referenda on the fall ballot. *Id*. at 651. The Seventh Circuit explained that the stay at home orders did not transform the deadline into an unconstitutional restriction on speech, stating, "orders concern conduct (social distancing), not what anyone may write or say." *Id.* at 652. The Seventh Circuit continued that "[o]rders regulating conduct often have incidental effects on speech, but this does not require courts to treat them as if they were regulations of speech." *Id.* (citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984)).

The Seventh Circuit's holding in *Morgan* applies here. Plaintiffs challenge orders that regulate non-expressive conduct such as keeping certain distance, wearing masks, and limiting gathering sizes. These activities are not speech and regulations that govern non-expressive conduct do not bring the First Amendment into play. *See Tagami v. City of Chicago*, 875 F.3d 375, 378 (7th Cir. 2017) (upholding the Chicago ordinance requiring women cover their breasts in public and stating that to be considered inherently expressive conduct that is protected by the First Amendment, "the conduct in question must comprehensively communicate its own message without additional speech."); *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985) (if regulated activity is not speech protected by the First Amendment, a court "need go no further").

While Plaintiffs attempt to equate masking requirements with speech, their claims do not concern their ability to communicate a message of their choosing. They also complain that they are unable to assemble with others particularly in bars or restaurants due to the state restrictions and are unable to "leave their homes." However, their own exhibits demonstrate that they are not confined to their homes and even the earliest orders permitted leaving home for a variety of purposes. (D. 24-2; D. 24-3 at 3; D 24-4 at, 4–5, 8–9, 14). The recent executive orders permit individuals to leave their homes and gather in groups of at least ten people and place no restrictions on the size of religious services. (D. 30-8 at 1; Executive Order 2021-03 at https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2021-03.aspx (last visited 2/11/2021); Executive Order 2021-04 at https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2021-04.aspx (last visited 2/11/2021). Although some of the restrictions may have the effect of regulating the place or method of communication, "[t]he guarantees of the First Amendment have never meant that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please." *Greer v. Spock*, 424 U.S. 828, 836 (1976) (quotations omitted). Moreover, there is no First Amendment right to speech in the manner one finds most effective. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 US 1, 36 (1973) (observing that "we have never presumed to possess either the ability or the authority to guarantee to the citizenry the most effective speech"). Plaintiffs may leave their home to communicate and assemble with others, they may also assemble and communicate using other methods, including the phone and internet. The restrictions on the size of gatherings and the mask requirement do not amount to violations of the right to assemble or speak freely.

Finally, Plaintiffs resort to their default position suggesting the Governor is allowing favored groups, particularly "Antifa" to gather, but prohibiting others. The Seventh Circuit

12

addressed a similar argument in *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 770 (7th Cir. 2020). There, the Seventh Circuit observed that the text of the executive orders did not exempt certain political groups from the order limiting the size of gatherings. *Id*. While the Seventh Circuit did not "rule out the possibility that someone might be able to prove this type of favoritism in the enforcement of an otherwise valid response to the COVID-19 pandemic, the record in this case falls short." *Id.* There, the Seventh Circuit observed that "absent from [the plaintiff's] allegations, however, is any proposed proof that state actors . . . were engaged in this *de facto* discrimination." *Id*. Here, too Plaintiffs failed to sufficiently support their assertion that the Governor favored a particular viewpoint, other than vague assertions regarding certain protestors gathering during the time the Governor had implemented restrictions on such gatherings. Accordingly, this claim fails because Plaintiffs failed to state a claim.[4]

### c. Plaintiffs fail to state a due process claim (Count IV).

Plaintiffs also otherwise fail to state a plausible claim for violation of substantive due process. Plaintiffs do not explain how the orders have deprived them of their fundamental rights, vaguely claiming that the orders "mandate that Plaintiffs stay at home, impinging on their fundamental rights to freedom of assembly, speech, and travel." (D. 24 at 34). However, as explained above, the recent orders do not mandate anyone stay home, but instead requires social distancing, mask wearing, and limits gathering sizes. Even the earliest orders permitted individuals to leave home for certain reasons.

In addition to being factually deficient, Plaintiffs' rights to freedom of assembly and speech are already protected by a specific constitutional provision—the First Amendment. A

---

[4] While Plaintiffs provide additional factual allegations in their response to the Motion to Dismiss that do not appear in the Amended Complaint, "the complaint may not be amended by briefs in opposition to a motion to dismiss." *Agnew v. NCAA*, 683 F.3d 328, 348 (7th Cir. 2012). Accordingly, the Court considered only those factual allegations found in the Amended Complaint.

substantive due process claim "cannot succeed . . . when a specific constitutional provision protects the right allegedly infringed upon." *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1017 (7th Cir. 2000) (*citing United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). Accordingly, Plaintiffs claim on this issue fails as both factually and legally deficient.

### d. Plaintiffs fail to state an equal protection claim (Count V)

The Equal Protection clause "is 'essentially a direction that all persons similarly situated should be treated alike.'" *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1008 (7th Cir. 2019) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Plaintiffs suggest that they have not been treated as other similarly situated persons in that the Governor allowed "Antifa" and "radical atheists" to riot and protest while the Governor has curtailed Plaintiffs' ability to travel, speak, and assemble, and that the Governor declared their businesses "non-essential." (D. 24 at 34). Plaintiffs further assert that the Court should apply strict scrutiny to the Governor's orders.

Their assertions regarding protests and riots fail to allege sufficient facts to support their assertion that the Governor's response reflects unequal treatment. Specifically, absent from these allegations is any proposed proof that the Governor's actions amount to discrimination or change the text of his orders. Moreover, the Court has already rejected Plaintiffs' assertion that the Governor's orders violated their rights of assembly, speech, and travel, as explained above. Plaintiffs may not simply repackage those claims as Equal Protection claims. *See Bogart v. Vermillion Cty.*, 909 F.3d 210, 214–15 (7th Cir. 2018) (affirming dismissal where "the same considerations and evidence that defeat [the plaintiff's] First Amendment claim cause the same claim repackaged under the Equal Protection Clause to fail"); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (rejecting the plaintiff's equal protection claim because the "free-exercise claim

arises under the First Amendment and gains nothing by attracting additional constitutional labels"). In short, Plaintiffs do not adequately support their allegations that they were similarly situated to the entities that purportedly received better treatment.

Finally, strict scrutiny only applies in limited circumstances, particularly where a suspect class is treated unequally, or the government violates fundamental rights. *Segovia v. United States*, 880 F.3d 384, 390 (7th Cir. 2018); *see also Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313 (1976) ("equal protection analysis requires strict scrutiny of a legislative classification only when it impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class"). Plaintiffs argue that the Executive Orders "mandate that Plaintiffs stay at home, impinging on their fundamental rights to freedom of assembly, speech and travel." (D. 24 at 36). As explained above, even according to Plaintiffs' own exhibits that include the Executive Orders, this is simply untrue. (D. 24-2; D. 24-3 at 3; D 24-4 at, 4–5, 8–9, 14). Residents were always permitted to leave their homes for certain reasons and there are now no limits on the number of people who can gather for religious services. People are also permitted to gather in groups of at least ten, and the Court has otherwise explained above why Plaintiffs' argument regarding freedom of speech and freedom of assembly fail. As Plaintiffs also fail assert that they are part of a suspect class, they cannot demand strict scrutiny.

At best, Plaintiffs' claims would instead be subject to rational basis review. *See St. Joan Antida*, 919 F.3d at 1008. Under that standard, courts will only invalidate a government action. "if there is no rational relationship between the law and some legitimate government purpose." *Segovia*, 880 F.3d at 390. The Governor's orders seek to limit contact between people to prevent the spread of a disease that has taken the life of thousands of Illinois residents. With the filing of this Amended Complaint Plaintiffs, airing basically the same issues as in their initial Complaint,

choose to ignore, or refuse to accept, the United States Supreme Court and the Seventh Circuit, along with hundreds of millions of Americans, who do in fact genuinely recognize the severity of the COVID-19 pandemic and its devasting effects on this country. *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020) (Roberts, C.J., concurring) (noting that COVID-19 had caused over 100,000 deaths with "no known cure, no effective treatment, and no vaccine"[5]); *Elim*, 962 F.3d at 342 (noting COVID-19 "is readily transmissible and has caused a global pandemic," adding that "without controls, each infected person will infect two to three others, causing an exponential growth in the number of cases," which "could overwhelm the medical system"). Other courts have also found that the Governor had a rational basis for the Executive Orders. *See Vill. of Orland Park v. Pritzker*, 475 F. Supp. 3d 866, 886, (N.D. Ill. 2020) ("It was rational for the Governor to weigh the benefits of a reduced infection rate against the costs of limiting activities that pose a high risk of transmission in crafting the state's response to COVID-19"); *Cassell v. Snyders*, 458 F. Supp. 3d 981, 999 (N.D. Ill. 2020) ("Given the importance of slowing the spread of COVID-19 in Illinois, the Order satisfies that level of scrutiny"). This Court is similarly persuaded the Governor rationally responded to the threat of a contagious virus that has taken the lives of many people by seeking to limit contact between people to stymie the spread of that virus. Accordingly, the Governor's orders have a legitimate purpose and would survive a rational basis review.

     **e. Plaintiffs fail to state a takings claim (Count VI).**

The Fifth Amendment protects private property from being taken for public use without just compensation. Here, Plaintiffs do not allege that the Governor physically took their property, but instead claim that he diminished the value of their property or interfered with their income. To

---

[5] As the parties have recognized, vaccines have since been developed and are being distributed.

plead such a *per se* regulatory taking, plaintiffs must plead sufficient facts to show that the regulation at issue "completely deprive[d]" them of "all economically beneficial use[s]" of their property. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005). Plaintiffs failed to plead basic facts about their business, including what types of services they offer or how they were impacted by the Governor's orders. They provide the name of the businesses and assert they lost income without additional details. These deficiencies fail to give the Governor fair notice of the claim or provide sufficient factual support to determine whether the claim is plausible, in violation of *Iqbal* and *Twombly*. Accordingly, Plaintiffs' takings claim fail for these reasons as well.

## CONCLUSION

The Governor has presented multiple, independent reasons that each of Plaintiffs' claims must fail. Accordingly, it is ORDERED that Defendant's Motion [28] is GRANTED and this case is DISMISSED. It is further ordered that Plaintiffs' Motion for a Preliminary Injunction [25] is DENIED as moot. Plaintiffs' request to amend their complaint for a second time is also DENIED.

The Clerk is directed to close this case.

ENTERED this 17th day of February, 2021.

/s/ James E. Shadid
James E. Shadid
United States District Judge